Joshua I. White (SBN 278166)
Kyle DeCamp (SBN 328585)
William M. Hogg (SBN 338196)
**LAUREL EMPLOYMENT LAW APC**
808 Wilshire Boulevard, Suite 200
Santa Monica, California 90401
Tel: (323) 551-9221
Fax: (310) 654-4093
josh@laurelemploymentlaw.com
kyle.decamp@laurelemploymentlaw.com
william@laurelemploymentlaw.com

*Counsel for Cervantes & the Putative Class Members*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| **JOCELYN CERVANTES,** Individually and for Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>**CAREATHOME MEDICAL PRACTICE, P.C. d/b/a VESTA HEALTHCARE, CAREATHOME MEDICAL PRACTICE (KY) P.S.C., CAREATHOME MEDICAL PRACTICE (CA), P.C., ESSEN MEDICAL ASSOCIATES PC, ESSEN MEDICAL URGICARE PLLC d/b/a METRO URGICARE,** and **DOES 1–10**, inclusive.<br><br>Defendants. | **Case No. ________________**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>The WARN Act (29 U.S.C. § 2101, *et seq.*)<br><br>**DEMAND FOR JURY TRIAL** |

## SUMMARY

1. Jocelyn Cervantes ("Cervantes") brings this class action against CareAtHome Medical Practice, P.C. d/b/a Vesta Healthcare, CareAtHome Medical Practice (KY) P.S.C., CareAtHome Medical Practice (CA), P.C., and Does 1–10, inclusive (together, "Vesta Defendants"), as well as Essen Medical Associates PC, and Essen Medical Urgicare PLLC d/b/a Metro Urgicare ("Essen Defendants") (collectively, "Vesta" or "Defendants") for violations of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.* (the "WARN Act").

2. Vesta violated the WARN Act when it terminated Cervantes and the Putative Class Members (defined below) without providing sufficient advance written notice.

3. Cervantes, a former employee of Vesta, seeks recovery on her own behalf and on behalf of approximately hundreds of other similarly situated former employees of damages in the amount of 60 days' compensation and benefits for each of them by reason of Vesta's violation of their rights under the WARN Act.

4. Cervantes and the Putative Class Members were employees of Vesta who were terminated without cause on their part on October 15, 2025, as part of or as the reasonably expected consequence of a mass layoff which was effectuated by Vesta on that date.

5. Vesta failed to give Cervantes and the other Putative Class Members advance written notice of their termination and/or failed to "give as much notice as practicable."

6. In fact, Vesta gave Cervantes and the other Putative Class Members no prior notice of the termination. It simply notified them that the termination was effective October 15, 2025—the same date Vesta sent the notice of permanent layoff.

7. In violation of the WARN Act, Vesta failed to provide as much notice as was practicable, and also failed to provide a statement of the basis for reducing the notification period to zero days advance notice.

8. Vesta had the layoff planned well in advance of October 15, 2025, and in fact began putting its layoff plans into motion ahead of time in anticipation of a merger and "wind-down" of business as a result of the merger.

9. Moreover, the fact that Vesta obtained millions of dollars in venture capital roughly a year earlier and still opted to engage in a mass layoff—and do so without any advance written notice to its employees—further underscores the severity of the WARN Act violations committed by Vesta.

10. Vesta's failure to provide its employees with advance written notice had a devastating economic impact on Cervantes and the Putative Class Members.

11. As a consequence, Cervantes and the other Putative Class Members are entitled under the WARN Act to recover from Vesta their respective compensation and benefits for 60 days.

12. Specifically, the class Cervantes seeks to certify is defined as:

> All former Vesta employees throughout the United States who were not given a minimum of 60 days' written notice of termination and whose employment was terminated on or about October 15, 2025 as a result of a "mass layoff" as defined by the WARN Act of 1988 (the "Class Members" or "Putative Class Members").

## Jurisdiction & Venue

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the WARN Act. 29 U.S.C. § 2104(a)(5).

14. This Court has specific personal jurisdiction over each of the Defendants because at least one of the WARN Act violations alleged herein occurred within the State of California.

15. This Court has general personal jurisdiction over Defendant CareAtHome Medical Practice (CA), P.C. because it is a California corporation.

16. Venue in this Court is proper pursuant to 29 U.S.C. § 2104(a)(5).

17. Vesta transacts business in this District and has business operations in this District.

18. Vesta employed Cervantes in this District and, as part of Cervantes's regular job duties, transacted business with California residents through telehealth services.

19. Vesta's unlawful actions involved harm to Cervantes, who is a California resident.

20. Cervantes was employed by Vesta and was therefore harmed by Vesta in San Bernardino County, which is in this district and division. 28 U.S.C. § 1391(b)(1).

## Parties

21. Vesta employed Cervantes as a non-exempt clinical assistant in Rancho Cucamonga, San Bernardino County, California from approximately August 2024 to October 15, 2025.

22. The putative class of similarly situated employees is defined above at Paragraph 12.

23. CareAtHome Medical Practice, P.C. d/b/a Vesta Healthcare is a New York professional corporation headquartered in New York City, New York. CareAtHome Medical Practice, P.C. d/b/a Vesta Healthcare may be served with process by serving its registered agent: **Corporation Service Company, 80 State Street, Albany, New York 12207** and/or **CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833**.

24. CareAtHome Medical Practice (KY) P.S.C. is a Kentucky professional services corporation with its principal office located in Kentucky. CareAtHome Medical Practice (KY) P.S.C. may be served with process by serving its registered agent: **Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601** and/or **CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833**.

25. CareAtHome Medical Practice (CA) P.C. is a California professional corporation with its principal place of business located in New York. CareAtHome Medical Practice (CA) P.C. may be served with process by serving its registered agent: **National Registered Agents, Inc., 330 North Brand Boulevard, Suite 700, Glendale, California 91203**.

26. Essen Medical Associates PC is a New York professional service corporation with its principal place of business in New York.

27. Essen Medical Associates PC may be served with process by serving its registered agent: **Raymond Iryami, 305 Madison Avenue, 46th Floor, New York, New York 10165**.

28. Essen Medical Urgicare PLLC d/b/a Metro Urgicare is a New York professional service limited liability company with its principal place of business in New York.

29. Essen Medical Urgicare PLLC d/b/a Metro Urgicare may be served with process by serving an employee authorized to receive service at: **305 Madison Avenue, 46th Floor, New York, New York 10165** and/or **P.O. Box 788, Hartsdale, New York 10530**.

30. The true names and capacities, whether a corporation, agent, individual or otherwise, of DOES 1 through 10, are unknown to Cervantes, who therefore sues said Defendants by such fictitious names.

31. Each Defendant designated herein as a DOE is negligently or otherwise legally responsible in some manner for the events and happenings referred to herein and thereby proximately caused injuries and damages to Cervantes and the Putative Class Members as alleged herein.

32. Cervantes will seek leave of Court to amend this Complaint to show the true names and capacities of the Doe Defendants when the same have been ascertained.

33. Upon information and belief, Defendants CareAtHome Medical

Practice (KY) P.S.C. and CareAtHome Medical Practice (CA) P.C. acted as the agents and assigns of Defendant CareAtHome Medical Practice, P.C. d/b/a Vesta Healthcare.

34. Defendant CareAtHome Medical Practice (KY) P.S.C. was listed as Cervantes's employer on her itemized wage statements pursuant to California Labor Code § 226.

35. Upon information and belief, Defendant CareAtHome Medical Practice (KY) P.S.C. paid Cervantes wages up until her termination at the behest of its principal, CareAtHome Medical Practice P.C. d/b/a Vesta Healthcare.

36. Upon information and belief, Defendant CareAtHome Medical Practice (CA) P.C. provided regional support and resources to workers like Cervantes who lived and worked in California, at the behest of its principal, CareAtHome Medical Practice P.C. d/b/a Vesta Healthcare.

37. Upon information and belief, each of the Defendants were the agents, employees, managing agents, supervisors, co-conspirators, parent corporation, joint employers, alter ego, and/or joint ventures of the other Defendants, and each of them, and in doing the things alleged herein, were acting at least in part within the course and scope of said agency, employment, conspiracy, joint employer, alter ego status, and/or joint venture and with the permission and consent of each of the other Defendants.

38. Upon information and belief, DOES 1 through 10 were the agents, representatives, employees, successors and/or assigns of Defendants and at all times pertinent hereto were acting within the course and scope of their authority as such agents, representatives, employees, successors, and/or assigns.

39. Upon information and belief, Essen Defendants acquired and/or merged with the Vesta Defendants as part of a merger and business restructuring.

40. As part of the merger and/or business restructuring, Vesta Defendants would wind down operations and Essen Defendants would incorporate Vesta

Defendants' operations in a new venture called "Intention Healthcare."

41. Upon information and belief, the Essen Defendants, doing business as "Intention Healthcare," are the successors in interest of the Vesta Defendants and acquired the assets and liabilities of the Vesta Defendants, including liabilities Vesta Defendants incurred under the WARN Act.[1]

42. As the successors in interest, and by virtue of taking on the Vesta Defendants' WARN Act liability, Essen Defendants have availed themselves of California and are therefore subject to specific personal jurisdiction in California.

43. By taking on Vesta Defendants' obligations, liabilities, and debts incurred based on Vesta Defendants' actions in California, namely terminating California residents' employment in violation of the WARN Act, Essen Defendants intentionally and knowingly availed themselves of the privilege of doing business in California and are subject to personal jurisdiction in California.

44. Upon information and belief, Vesta Defendants operated as a single business enterprise, even if by and through various regionally-designated subsidiary organizations.

45. For purposes of the WARN Act, the decision to terminate Cervantes and the Putative Class Members was made by CareAtHome Medical Practice P.C. d/b/a Vesta Healthcare, and such corporate-level decision was implemented company-wide through its subsidiary companies.

46. For purposes of WARN Act liability, the Essen Defendants have obtained the liability incurred by the Vesta Defendants and, as such, have purposefully availed themselves of the privilege of conducting business in California by and through their relationship with the Vesta Defendants.

---

[1] *See* https://intentionhealthcare.com/ ("As communicated in recent correspondence, Vesta Healthcare is winding down operations. Intention Healthcare has acquired Vesta's technology and assets and is continuing many of the services previously provided by Vesta, backed by Essen Healthcare. Many Vesta staff members and clinicians have joined our team.") (last visited Oct. 21, 2025).

## FACTS

47. Vesta was founded in 2018 as a technology and clinical services organization, dedicated to connecting caregiver insights to the rest of the care team.[2]

48. "Vesta Healthcare proactively identifies the need for additional support in the home and provides 24/7 telehealth support for caregivers and care recipients, with a focus on high-need, frail senior populations. Vesta partners with home care, health plans and providers to create value-based population health programs that emphasize clinical quality, improved health outcomes and personalized engagement."[3]

49. Vesta went through multiple rounds of venture capital fundraising.

50. For example, in approximately October 2024, Vesta raised over $60 million as part of a Series C funding round.[4]

51. To meet its business objectives, Vesta employed hundreds of employees around the country, including in California, New York, Texas, and elsewhere.

52. On October 15, 2025, Cervantes received a "Notice of Permanent Layoff" terminating her employment effective that same day.


Jocelyn:

The following outlines important information related to your permanent layoff from CareAtHome, d/b/a/ Vesta Healthcare ('the Company') due to the wind down of business operations, effective 10/15/2025. To help you navigate this transition, please take note of the following important information.

---

[2] https://www.linkedin.com/company/vestahealthcare (last visited Oct. 21, 2025).
[3] https://www.linkedin.com/company/vestahealthcare (last visited Oct. 21, 2025).
[4] https://homehealthcarenews.com/2024/10/how-vesta-healthcare-raised-over-60m-to-integrate-personal-home-care/ (last visited Oct. 21, 2025).

53. Cervantes was informed she would be paid through the next day, October 16th, and would receive her final paycheck on or before the next payroll date.

54. Cervantes was terminated without cause on her part.

55. Hundreds of other Putative Class Members were similarly terminated on or around October 15, 2025 without cause on their part as part of or as the reasonably expected consequence of the terminations.

56. In the weeks leading up to the October 15th layoff, Vesta informed its employees like Cervantes and the Putative Class Members that no layoffs were happening and that the business was only undergoing a restructuring.

57. Upon information and belief, Vesta had planned the merger with Essen Defendants, its wind-down, and the layoffs discussed herein months in advance of sending the notices of termination—even while falsely telling employees no layoffs were forthcoming or planned.

58. Cervantes brings this action on her own behalf and, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the other Putative Class Members.

59. At all relevant times, Vesta employed 100 or more employees, exclusive of part-time employees (*i.e.*, those employees who had worked fewer than 6 of the 12 months prior to the date notice was required to be given or who had worked fewer than an average of 20 hours per week during the 90 day period prior to the date notice was required to be given) (the "Part-Time Employees"), or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

60. The terminations on or around October 15, 2025 of Vesta's employees resulted in the loss of employment for at least 50 employees, excluding Part-Time Employees.

61. The terminations on or around October 15, 2025 of Vesta's employees resulted in the loss of employment for at least 33% of Vesta's employees, excluding Part-Time Employees.

62. Cervantes and the Putative Class Members were discharged without cause on their part on or about October 2025, or thereafter as the reasonably expected consequence of the terminations that occurred on that date.

63. Cervantes and each of the other Putative Class Members experienced an employment loss as part of or as the reasonably expected consequence of the mass layoff that occurred on or around October 2025.

64. Prior to the mass layoff, Cervantes and the Putative Class Members did not receive written notice at least 60 days in advance of the termination of their employment, nor did they receive as much notice as practicable under the circumstances.

65. Rather, they received notice the same day as their termination. In other words, they received no advance notice.

66. Vesta informed Cervantes and the Putative Class Members that, if they were enrolled in healthcare benefits as of October 15, 2025, their coverage would remain active until October 31, 2025 (*i.e.*, 16 calendar days following the termination date).

67. Vesta informed Cervantes and the Putative Class Members that, for those that were classified as hourly, non-exempt employees, they would be paid through October 16, 2025.

## RULE 23 CLASS ACTION ALLEGATIONS

68. Cervantes brings her WARN Act claims as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

69. Each of the Putative Class Members is similarly situated to Cervantes with respect to their rights under the WARN Act.

70. Like Cervantes, the other Putative Class Members were victimized by

Vesta's mass layoff event without appropriate prior notice of such layoff.

71. The Putative Class Members are known to Vesta and can be readily identified through Vesta's business and personnel records.

72. The Putative Class Members are similarly situated in the most relevant respects.

73. Even if their precise job titles, exact duties, and locations might vary, these differences do not matter for the purposes of determining their entitlement to WARN Act notice and damages.

74. Rather, the Putative Class Members are held together by Vesta's decision to terminate numerous employees without providing advance written notice, which systematically deprived Cervantes and the Putative Class Members of their employment, wages, and benefits.

75. Vesta's records reflect the wages and benefits paid to the Putative Class Members each pay period.

76. The damages owed to Cervantes and the other Putative Class Members can therefore be calculated using the same formula applied to the same records.

77. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Vesta's records, and there is no detraction from the common nucleus of liability facts.

78. Therefore, the issue of damages does not preclude class treatment.

79. Cervantes's experiences are therefore typical of the experiences of the other Putative Class Members.

80. Cervantes has no interest contrary to, or in conflict with, the interests of other Putative Class Members that would prevent class treatment.

81. Like each Putative Class Member, Cervantes has an interest in obtaining the wages and other employment benefits under the WARN Act.

82. Cervantes and her counsel will fairly and adequately represent the Putative Class Members and their interests.

83. Indeed, Cervantes retained counsel with significant experience in handling complex class and collective action litigation.

84. A class action, such as this one, is superior to other available means for fair and efficient adjudication of this matter.

85. Absent this class action, many Putative Class Members will not obtain redress for their injuries, and Vesta will reap the unjust benefits of violating the WARN Act.

86. Further, even if some of the Putative Class Members could afford individual litigation against Vesta, it would be unduly burdensome to the judicial system.

87. Indeed, the multiplicity of actions would create a hardship for the Putative Class Members, the Court, and Vesta.

88. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

89. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

90. The common questions of law and fact include:

a. Whether the Putative Class Members enjoyed the protections of the WARN Act;

b. Whether the Putative Class Members were employees of Vesta;

c. Whether Vesta terminated the employment of all the Putative Class Members without cause on their part;

d. Whether Vesta terminated the employment of the Putative Class Members without giving them at least 60 days' prior written notice as required by the WARN Act;

e. Whether Vesta failed to pay Putative Class Members wages and provide other employment benefits for a 60-day period following their respective terminations; and

f. Whether Vesta's violations were willful and knowing.

91. Vesta intentionally, willfully, and knowingly violated the WARN Act concerning Cervantes and the other Putative Class Members.

92. Vesta's illegal layoff, without prior notice, deprived Cervantes and the other Putative Class Members of wages and benefits as required under the WARN Act.

93. Cervantes's claims are typical of the claims of the other Putative Class Members in that for each of the acts described herein, Cervantes and the other Putative Class Members are an injured party with respect to their rights under the WARN Act.

94. The class is so numerous as to render joinder of all members impracticable in that there are hundreds of Putative Class Members.

95. The questions of law and fact common to the Putative Class Members predominate over any questions affecting only individual members.

96. No Putative Class Member has an interest in individually controlling the prosecution of a separate action under the WARN Act.

97. No litigation concerning the WARN Act rights of any Putative Class Member has been commenced.

98. Concentrating all the potential litigation concerning the WARN Act rights of the Putative Class Members in this Court will avoid a multiplicity of suits, will conserve judicial resources, and the resources of the parties, and is the most efficient means of resolving the WARN Act rights of all the Putative Class Members.

99. As a result of Vesta's violation of the WARN Act, each Putative Class Member is entitled to recover an amount equal to the sum of (a) his/her respective wages, salaries, commissions, bonuses and accrued pay for vacation and personal

days for the workdays in the 60 calendar days prior to their respective terminations and fringe benefits for 60 calendar days prior to their respective terminations; and (b) His/her medical expenses incurred during the 60-day period following their respective terminations that would have been covered and paid under Vesta's health insurance plan had that plan provided coverage for such period.

100. Vesta failed to pay Cervantes and the Putative Class Members for Vesta's WARN Act violations in an amount equal to the sum of or any part of the sum of: (a) their respective wages, salary, commissions, bonuses and accrued pay for vacation and personal days for the workdays in the 60 calendar days prior to their respective terminations and fringe benefits for 60 calendar days prior to their respective terminations; and (b) their medical expenses incurred during the 60 calendar days from and after the date of his/her termination that would have been covered under the Defendant's benefit plans had those plans remained in effect.

## COUNT I

## VIOLATIONS OF THE WARN ACT

101. Cervantes incorporates all other paragraphs by reference.

102. Cervantes brings her WARN Act claims on behalf of herself and all other Putative Class Members pursuant to Rule 23.

103. At all relevant times, Cervantes and the Putative Class Members have been entitled to the rights, protections, and benefits provided under the WARN Act, 29 U.S.C. § 2101, *et seq*.

104. Vesta was, and is, subject to the notice and back pay requirements of the federal WARN Act because Vesta is a business enterprise that employed 100 or more employees, excluding Part-Time Employees, and/or employed 100 r more employees who in the aggregate work at least 4,000 hours per week (exclusive of overtime, as defined in the WARN Act. 29 U.S.C. § 2101(1)(A) & (B).

105. The WARN Act regulates the amount of notice an employer must provide to employees who will be terminated due to the employer's closing of a plant

or mass layoffs, as well as the back pay and other associated benefits an affected employee is due based on a violation of the required notice period.

106. Pursuant to the WARN Act, 29 U.S.C. § 2102, and 20 C.F.R. § 639.1 – § 639.10 *et seq*., Vesta was required to provide at least sixty (60) days prior written notice of the termination, or notice as soon as practicable, to the affected employees, explaining why the sixty (60) days prior notice was not given.

107. Vesta willfully violated the federal WARN Act by failing to provide the required notice to Cervantes and the other Putative Class Members.

108. Vesta failed to pay Cervantes and other Putative Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay, and accrued vacation for 60 working days following their respective terminations, and failed to make the pension and 401(k) contributions, provide other employee benefits under ERISA, and pay their medical expenses for 60 calendar days from and after the dates of their respective terminations.

109. The Essen Defendants took on the assets and liabilities of the Vesta Defendants, including liability incurred under the WARN Act.

110. Section 2103 of the federal WARN Act exempts certain employees from the notice requirements of the Act. 29 U.S.C. §§ 2103(1)–(2).

111. None of the WARN Act exemptions apply to Vesta.

112. Accordingly, Cervantes and the Putative Class Members must receive notice and back pay required by the WARN Act, 29 U.S.C. §§ 2102, 2104.

113. Cervantes and the other Putative Class Members have been damaged by Vesta's conduct constituting violations of the WARN Act and are entitled to damages for their back pay and associated benefits for each day of the violations because Vesta has not acted in good faith nor with reasonable grounds to believe their acts and omissions were not a violation of the WARN Act.

## Relief Sought

WHEREFORE, Cervantes, individually and on behalf of the other Putative Class Members, seeks the following relief:

a. An Order certifying this lawsuit as a class action pursuant to Fed. R. Civ. P. 23;

b. An Order appointing Cervantes and her counsel to represent the interests of the Class Members;

c. An Order awarding compensatory damages according to proof at trial in an amount equal to at least the amounts provided by the WARN Act, 29 U.S.C. § 2104(a);

d. A Declaratory Judgment that Vesta violated the WARN Act and public policy as alleged herein;

e. An Order finding Vesta liable to Cervantes and the other Class Members for all compensatory damages available under the WARN Act;

f. An equitable accounting to identify, locate, and restore all former employees the wages and compensatory damages they are due, with interest thereon at the highest rates allowable by law;

g. An Order awarding attorney's fees, costs, disbursements, and expenses as provided by the WARN Act, 29 U.S.C. § 2104(1)(6), and/or other applicable law;

h. Pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Date: October 21, 2025

Respectfully submitted,

*/s/ William M. Hogg*
Joshua I. White
Kyle DeCamp
William M. Hogg
**LAUREL EMPLOYMENT LAW APC**

*Counsel for Cervantes & the Putative Class Members*

## DEMAND FOR JURY TRIAL

Cervantes hereby demands a jury trial on all claims and issues, as she and the other Putative Class Members are entitled to a jury.

Date: October 21, 2025

Respectfully submitted,

*/s/ William M. Hogg*
Joshua I. White
Kyle DeCamp
William M. Hogg
**LAUREL EMPLOYMENT LAW APC**

*Counsel for Cervantes & the Putative Class Members*